[Civ. No. 15683.   Second Dist., Div. One.   Aug. 15, 1947.]

L. M. GARGANO et al., Appellants, v. THE HOME INSUR-
ANCE COMPANY (a Corporation), Respondent.

McBain & Morgan and Angus C. McBain for Appellants.

Stanley A. Phipps for Respondent.

YORK, P. J.—By the instant action, plaintiffs seek to re-
cover under a policy of so-called "cargo" insurance issued by
defendant company on June 6, 1944, whereby the latter agreed
to insure plaintiffs up to $5,000 for loss of property upon
any one automobile, truck, trailer, or vehicle, or any one semi-
trailer operated by plaintiffs, whether owned, leased or rented
by them, against loss resulting from plaintiffs' liability to
others for loss or damage to general merchandise caused by
various perils enumerated in the policy, including collision
or overturning of said vehicles, while such goods and merchan-
dise were in the custody and control of plaintiffs and in due
course of transit.

The loss for which plaintiffs seek recovery arose from an
accident occurring on August 18, 1944, in Lake County, Cali-
fornia, on the road between Kelseyville and Yuba City, when
a tractor and a semitrailer owned by one E. W. Brown and
leased from him by plaintiffs under an oral agreement, went
out of control and overturned on a curve, thereby damaging

to the extent of $2,160 a cargo of pears which was being carried on said semitrailer. The pears were being shipped by plaintiffs from Kelseyville to Yuba City under contract with the shipper, Kelseyville Packing Company.

Following the accident, plaintiffs paid the shipper for the loss of the pears and made claim therefor against defendant insurer under the policy of cargo insurance heretofore mentioned. Defendant denied liability on the sole ground that plaintiffs had breached the insurance contract and forfeited their right to recover thereunder, for the reason that they had agreed with E. W. Brown to make the protection afforded by such policy available to him, thus impairing defendant's right of subrogation against said E. W. Brown.

The trial court found with respect to this issue as follows: "It is true that three or four weeks before said accident and damage to said pears which occurred on August 18th, 1944, the plaintiffs and E. W. Brown made, executed and entered into an oral agreement wherein and whereby the plaintiffs promised and agreed to make available to the said E. W. Brown the protection, benefits and insurance coverage afforded by said policy of liability insurance No. TM 330197 issued by The Home Insurance Company on or about June 6, 1944. It is further true that as part of said agreement, said E. W. Brown promised to pay to plaintiffs the premiums required for said policy of insurance, in consideration of the plaintiffs' promise to make the protection, benefits and insurance coverage of said policy available to said E. W. Brown.

"It is true that said E. W. Brown paid to the plaintiffs the said premiums required by the terms of said policy of insurance and that the plaintiffs received the same by deducting the amount of such premiums, as such, from the sums paid by plaintiffs to the said E. W. Brown for the use of his tractor and semi-trailer."

This appeal is prosecuted from the judgment which followed, it being urged that there is no evidence that the benefits of the insurance policy were conferred upon E. W. Brown by agreement, express or implied, and there is "no evidence to support a finding that such breach had occurred or that plaintiffs had thereby forfeited their right to recover."

Appellant Ted Gargano testified that three or four weeks prior to August 18, 1944, he met Mr. Brown in Los Angeles, at which time Mr. Brown said he had heard that appellant had "this pear haul or pear contract" in Lake County. "He

asked if I could use his truck up there on that haul of mine and I said yes, and naturally he wanted to know what the pay was. . . . I told him it paid ten cents a box net to him less insurance and unloading and driver's wages, fuel and maintenance of the truck he had to pay for. The reason for that was he could not come up there himself. . . . I told him I would take care of it. I would pay the driver and service station there for gasoline and repairs he needed up there and deduct it from his check at the end of the season." In answer to the question: "Now, in this conversation you said something about deducting insurance. Will you tell us, to the best of your recollection, exactly what was said in this conversation about insurance?" said witness stated: "That I was to deduct one and one-half per cent for cargo insurance, which I did. . . . A dollar and a half per $100 that was deducted from his earnings. . . . For cargo insurance to protect me and the shipper. Q. Did you tell him that? A. Yes, sir. Q. Was anything said in that conversation about cargo insurance to protect him, Brown? A. No, it was not brought up. Q. Did Brown say anything to you about getting cargo insurance to protect himself in that conversation? A. No. . . . Q. Did you discuss with him or talk with him in any way about the exact nature of the insurance or the extent of the insurance or the amount of the insurance you intended to carry? A. No." On cross-examination, said witness was asked: "Mr. Gargano, did you say anything to Mr. Brown in your conversation about insurance for him at the time you were discussing and talking about that one and one-half per cent? A. For his protection, you mean? Q. Yes. A. No."

Obviously, there is nothing in the testimony of appellant Ted Gargano, who was the only witness produced at the trial herein, tending to establish that appellants agreed with E. W. Brown that the latter should be protected by the policy of cargo insurance issued by respondent.

In this connection, respondent asserts that "Although it is true that the appellant Ted Gargano testified that in his conversation with E. W. Brown he told the latter that the cargo insurance was for the protection of appellants and the owners of the cargo, the Court did not find that this was the agreement between the parties. The Court had the following evidence before it that such was not the agreement. The affidavit of the appellant Ted Gargano, admitted in evidence as Defendant's Exhibit 'A,' makes no mention that the cargo in-

surance which Brown was to pay for was to be for the *sole* benefit of the Garganos and the owners of the cargo." (Emphasis added.)

The affidavit referred to was made by appellant Ted Gargano shortly after the accident occurred and states: "We paid Mr. Brown a straight fee of ten (10¢) cents per box of pears hauled for the rental of this equipment. . . . From this ten (10¢) cents per box fee, I deducted the wages and fuel costs which were charged back to Mr. Brown, and I also deducted the premiums on the cargo insurance carried on this equipment. This is the arrangement we had with Mr. Brown and we have made no agreement with him and have said nothing to change this arrangement. I further certify I have done nothing to prejudice, waive, or interfere with any rights of subrogation the company may have as a result of this loss. Dated November 22, 1944."

No inconsistency exists between this affidavit and the direct testimony of appellant Ted Gargano hereinbefore recited. Neither supports the trial court's finding that appellants and Brown "entered into an oral agreement wherein and whereby the plaintiffs promised and agreed to make available to the said E. W. Brown the protection, benefits and insurance coverage afforded by said policy of liability insurance" issued by respondent. The record discloses no evidence to support a finding that appellants breached the contract of insurance or forfeited their right to recover thereunder.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.